No. 21-40470

───────────────────────

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

───────────────────────

UNITED STATES OF AMERICA,
*Plaintiff–Appellee,*

v.

SYLVIA P. ATKINSON,
*Defendant–Appellant.*

───────────────────────

On Appeal from the United States District Court
For the Southern District of Texas
Brownsville Division, Case No. 1:19-CR-01097

───────────────────────

BRIEF OF PLAINTIFF–APPELLEE

───────────────────────

JENNIFER B. LOWERY
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

JESSICA C. AKINS
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
713.567.9102

ATTORNEYS FOR APPELLEE

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is unnecessary in this case. The facts and legal arguments are adequately presented in the briefs and record; oral argument would not significantly aid the decisional process.  Fed. R. App. P. 34(a)(2)(C).

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ...................................i

TABLE OF AUTHORITIES ........................................................vi

STATEMENT OF JURISDICTION ..........................................1

STATEMENT OF THE ISSUES................................................1

STATEMENT OF THE CASE ...................................................3

    I.    *Procedural history* ...................................................3

    II.   *Case overview* .........................................................3

    III.  *Evidence of Atkinson's guilt* ....................................4

    IV.  *PSR & sentencing*..................................................16

SUMMARY OF THE ARGUMENT .......................................17

ARGUMENT .......................................................................19

    I.    The evidence is sufficient to support Atkinson's convictions for conspiracy, bribery, and violations of the Travel Act. ..............................................................19

        A.   *Standard of Review*......................................19

        B.   *The evidence is sufficient to show Atkinson conspired with other individuals, in addition to the CI and undercover agent. (Responsive to Issue I.)* .......21

# **TABLE OF CONTENTS, cont'd**

**Page**

C. *The government was not required to establish the ultimate use of the federal funds received by the school district. (Responsive to Issue II.)* .......................25

D. *Atkinson's complaint that the fictitious movie project was not a "thing of value" is misguided as Fifth Circuit precedent allows for intangible items to have value. (Responsive to Issue III.)* .......................29

E. *The evidence is legally sufficient to support Atkinson's Travel Act convictions as the Texas bribery statute was a proper predicate offense. (Responsive to Issue IV).* ...............................................32

II. Contrary to Atkinson's claim, the district court did not deny her right to a public trial under the Sixth Amendment by partially closing the courtroom during the testimony of one witness. (Responsive to Issue V.)........37

    A. *Standard of Review*........................................................37

    B. *The court closure during the testimony of one witness constitutes a partial closure, and in this case the live audio feed made available to the public in a nearby courtroom was justified as a reasonable alternative.*...................................................37

III. Atkinson has not shown the district court clearly erred in sentencing. The district court properly calculated the advisory guideline range.........................................................43

    A. *Standard of Review*........................................................43

# **TABLE OF CONTENTS, cont'd**

**Page**

     B.    *Atkinson has not shown the district court erred by imposing a 2-level enhancement under U.S.S.G. § 2C1.1(b)(1) because the offense involved more than one bribe. (Responsive to Issue VI.)*......................44

     C.    *Atkinson has not shown that the district judge erred by imposing a 4-level enhancement under U.S.S.G. § 3B1.1(a) because there was evidence Atkinson was an organizer or leader of a criminal activity that involved 5 or more participants or was otherwise extensive. (Responsive to Issue VII.)*.............48

     D.    *Atkinson has not shown that the district court erred by denying her a 3-level downward adjustment under U.S.S.G. § 2X1.1(b)(2) because the evidence demonstrated she completed all acts necessary to complete the substantive offense. (Responsive to Issue VIII.)* ............................................52

IV.    Atkinson's within-guidelines sentence of 80 months is not substantively unreasonable and certainly not plain error. (Responsive to Issue IX.) ............................................56

     A.    *Standard of Review*......................................................56

     B.    *The sentence is substantively reasonable because the district court carefully considered the 18 U.S.C. § 3553(a) factors, concluded those factors did not support a downward variance, and imposed a guideline sentence.* ......................................................58

CONCLUSION ......................................................................64

CERTIFICATE OF SERVICE..............................................65

iv

# **TABLE OF CONTENTS, cont'd**

**Page**

CERTIFICATE OF COMPLIANCE ........................................................ 66

# TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*Ayala v. Speckard*, 131 F.3d 62 (2d Cir. 1997)
    (en banc)......................................................................40

*Bowden v. Keane*, 237 F.3d 125 (2d Cir. 2001)...........................39, 41, 42

*Gall v. United States*, 552 U.S. 38 (2007).........................................56, 62

*McDonald v. State*, 329 So.2d 583 (1975)................................................32

*People v. Sanabria*, 301 A.D.2d 307 (1st Dept. 2002) .............................41

*Perrin v. United States*, 444 U.S. 37 (1979).....................................34, 35

*Rodriguez v. Miller*, 537 F.3d 102 (2d Cir. 2008) ...................................41

*Sabri v. United States*, 541 U.S. 600 (2004)......................................26, 27

*Salinas v. United States*, 522 U.S. 52 (1997) .........................................26

*Shepard v. United States*, 544 U.S. 13 (2005) ..................................33, 34

*Taylor v. United States*, 495 U.S. 575 (1990) ...................................33, 34

*United States v. Alonzo*, 435 F.3d 551 (5th Cir. 2006).....................56, 63

*United States v. Alvarado*, 691 F.3d 592 (5th Cir. 2012).......................61

*United States v. Balleza*, 613 F.3d 432 (5th Cir. 2010)..........................63

*United States v. Barraza*, 655 F.3d 375 (5th Cir. 2011) ........................47

*United States v. Brace*, 145 F.3d 247 (5th Cir. 1998)
    (en banc)......................................................................20

# TABLE OF AUTHORITIES, cont'd

**Cases**                                                            **Page(s)**

*United States v. Bravo-Fernandez*, 913 F.3d 244 (1st Cir. 2019) ........... 26

*United States v. Brown*, 727 F.3d 329 (5th Cir. 2013) ........................... 51

*United States v. Bynum*, 327 F.3d 986 (9th Cir. 2003) .......................... 46

*United States v. Cervantes*, 706 F.3d 603 (5th Cir. 2013) ................ 39, 43

*United States v. Chapman*, 851 F.3d 363 (5th Cir. 2017) ..................... 23

*United States v. Cluff*, 857 F.3d 292 (5th Cir. 2017) ............................ 40

*United States v. Coleman*, 609 F.3d 699 (5th Cir. 2010) ...................... 21

*United States v. Delgado*, 256 F.3d 264 (5th Cir. 2001) ....................... 21

*United States v. Delgado*, 984 F.3d 435 (5th Cir. 2021) ............. 29, 31, 62

*United States v. Diaz*, 637 F.3d 592 (5th Cir. 2011) ............................. 62

*United States v. Espinoza–Seanez*, 862 F.2d 526 (5th Cir. 1988) ........... 22

*United States v. Fernandez*, 590 F. App'x. 117 (2d Cir. 2015)
(unpublished) .................................................................................... 40

*United States v. Fernandez*, 722 F.3d 1 (1st Cir. 2013) ........................ 31

*United States v. Girard*, 601 F.2d 69 (2d Cir. 1979) ............................ 30

*United States v. Greenwood*, 974 F.2d 1449 (5th Cir. 1992) .................. 22

*United States v. Gutierrez*, 635 F.3d 148 (5th Cir. 2011) ..................... 57

## <u>TABLE OF AUTHORITIES, cont'd</u>

<u>**Cases**</u>                                                          <u>**Page(s)**</u>

*United States v. Haggerty*, 997 F.3d 292 (5th Cir. 2021),
    *cert. denied,* 142 S. Ct. 759 (2022) ................................................. 20

*United States v. Hines*, 541 F.3d 833 (8th Cir. 2008) ............................ 30

*United States v. Huntsberry*, 956 F.3d 270 (5th Cir. 2020) ................... 19

*United States v. Ibarra-Zelaya*, 465 F.3d 596 (5th Cir. 2006) ............... 21

*United States v. Jenkins*, 943 F.2d 167 (2d Cir. 1991) ........................... 34

*United States v. John*, 597 F.3d 263 (5th Cir. 2010),
    *abrogated by Van Buren v. United States,*
    141 S. Ct. 1648 (2021) ...................................................................... 53

*United States v. Jones*, 642 F.2d 909 (5th Cir. 1981) ............................. 35

*United States v. Key*, 599 F.3d 469 (5th Cir. 2010) ................................ 62

*United States v. Kieffer*, 991 F.3d 630 (5th Cir.),
    *cert. denied,* 142 S. Ct. 297 (2021) ................................................. 20

*United States v. Knox*, 112 F.3d 802 (5th Cir.),
    *vacated in part on other grounds*, 120 F.3d 42 (5th Cir. 1997) ..... 54

*United States v. Lipscomb*, 299 F.3d 303 (5th Cir. 2002) ...................... 26

*United States v. Liu*, 960 F.2d 449 (5th Cir. 1992) ................................ 51

*United States v. Lopez-Velasquez*, 526 F.3d 804 (5th Cir. 2008) ............ 57

*United States v. Lugo-Lopez*, 833 F.3d 453 (5th Cir. 2016) ................... 57

# TABLE OF AUTHORITIES, cont'd

**Cases**                                                                                      **Page(s)**

*United States v. Madrid*, 610 F. App'x. 359 (5th Cir. 2015)
(unpublished) .................................................................................. 46

*United States v. Mares*, 402 F.3d 511 (5th Cir. 2005) ............................ 59

*United States v. Marmolejo*, 89 F.3d 1185 (5th Cir. 1996) ............... 28, 30

*United States v. Martinez*, 900 F.3d 721 (5th Cir. 2018) ....................... 25

*United States v. McLaren,* 13 F.4th 386 (5th Cir. 2021)........................ 20

*United States v. McLean*, 802 F.3d 1228 (11th Cir. 2015) ..................... 26

*United States v. Millet*, 123 F.3d 268 (5th Cir. 1997) ............................ 35

*United States v. Misla-Aldarondo*, 478 F.3d 52 (1st Cir. 2007) ............ 46

*United States v. Moeller*, 987 F.2d 1134 (5th Cir. 1993)........................ 27

*United States v. Nardello*, 393 U.S. 286 (1969)...................................... 35

*United States v. Narvaez*, 38 F.3d 162 (5th Cir. 1994) .......................... 51

*United States v. Nilsen*, 967 F.2d 539 (11th Cir. 1992) .................... 30, 32

*United States v. Njoku*, 737 F.3d 55 (5th Cir. 2013) .............................. 22

*United States v. Ogle*, 92 F. App'x. 996 (5th Cir. 2004) ........................ 55

*United States v. Olano*, 507 U.S. 725 (1993) ......................................... 58

*United States v. Osborne*, 68 F.3d 94 (5th Cir. 1995) ........... 37, 38, 40, 42

## TABLE OF AUTHORITIES, cont'd

**Cases**                                                      **Page(s)**

*United States v. Owens*, 697 F.3d 657 (7th Cir. 2012) ............................ 31

*United States v. Peltier*, 505 F.3d 389 (5th Cir. 2007),
   *abrogated by Holguin-Hernandez v. United States*,
   140 S. Ct. 762 (2020) ......................................................... 58

*United States v. Perez*, 355 F. App'x. 349 (11th Cir. 2009)
   (unpublished) ...................................................................... 55

*United States v. Perkins*, 846 F. App'x. 256 (5th Cir. 2021)
   (unpublished) ...................................................................... 63

*United States v. Picquet*, 963 F.2d 54 (5th Cir. 1992) ............................ 31

*United States v. Reyes*, 239 F.3d 722 (5th Cir. 2001) ............................ 28

*United States v. Richard*, 775 F.3d 287 (5th Cir. 2014) .............. 21, 22, 28

*United States v. Rodriguez-Leos*, 953 F.3d 320 (5th Cir. 2020) .............. 55

*United States v. Romans*, 823 F.3d 299 (5th Cir. 2016) ........................ 25

*United States v. Roussel*, 705 F.3d 184 (5th Cir. 2013) ........................ 45

*United States v. Shoemaker*, 746 F.3d 614 (5th Cir. 2014) .................... 21

*United States v. Smilowitz*, 974 F.3d 155 (2d Cir. 2020),
   *cert. denied*, 141 S. Ct. 2570 (2021) ................................. 36

*United States v. Smith*, 440 F.3d 704 (5th Cir. 2006) ............................ 56

*United States v. Smith*, 789 F.2d 196 (3d Cir. 1986) ............................ 34

# TABLE OF AUTHORITIES, cont'd

**Cases**                                                                    **Page(s)**

*United States v. Soto*, 819 F.3d 213 (5th Cir. 2016).........................43, 55

*United States v. Thompson*, 757 F. App'x. 408 (5th Cir. 2019)
        (unpublished)...................................................................58

*United States v. Toles*, 867 F.2d 222 (5th Cir. 1989) ...........................55

*United States v. Virgen-Moreno*, 265 F.3d 276 (5th Cir. 2001) .............22

*United States v. Walsh*, 700 F.2d 846 (2d Cir. 1983) .............................36

*United States v. Westbrook*, 119 F.3d 1176 (5th Cir. 1997) ...................22

*United States v. Westmoreland*, 841 F.2d 572 (5th Cir. 1988) ..............27

*United States v. Williams*, 705 F.2d 603 (2d Cir. 1983).........................32

*Waller v. Georgia*, 467 U.S. 39 (1984).....................................................39

## Rules and Statutes

Fed. R. App. P. 4(b)(2) .................................................................................1

Fed. R. App. P. 34(a)(2)(C) ..........................................................................i

U.S. Const. amend. VI.................................................................................38

18 U.S.C. § 371.............................................................................................21

18 U.S.C. § 666......................................................................................27, 28

18 U.S.C. § 666(a) .......................................................................................29

## TABLE OF AUTHORITIES, cont'd

**Rules and Statutes**                                            **Page(s)**

18 U.S.C. § 666(a)(1)(B) ................................................................ 26

18 U.S.C. § 1952(a) .............................................................. 33, 37

18 U.S.C. § 1952(b) .............................................................. 33, 37

18 U.S.C. § 1952(b)(i)(2) ............................................................ 33

18 U.S.C. § 3231 ..................................................................... 1

18 U.S.C. § 3553(a) ........................................................... *passim*

18 U.S.C. § 3553(a)(2)(D) ........................................................ 61

18 U.S.C. § 3553(a)(6) ............................................................ 62

18 U.S.C. § 3742(a) ................................................................. 1

28 U.S.C. § 1291 ................................................................... 1

Tex. Penal Code § 36.02(a) ................................................ 33, 34

**United States Sentencing Guidelines**

U.S.S.G. § 2C1.1 .................................................................. 44

U.S.S.G. § 2C1.1(a)(1) ........................................................... 16

U.S.S.G. § 2C1.1(b)(1) ..................................................... *passim*

U.S.S.G. § 2C1.1(b)(1) cmt. n. 2 ............................................. 45

U.S.S.G. § 2C1.1(b)(1) cmt. background .................................. 47

## TABLE OF AUTHORITIES, cont'd

**United States Sentencing Guidelines**                    **Page(s)**

U.S.S.G. § 2C1.1(b)(2)...................................................................16

U.S.S.G. § 2C1.1(b)(3)...................................................................16

U.S.S.G. § 2X1.1...........................................................................55

U.S.S.G. § 2X1.1(b).......................................................................56

U.S.S.G. § 2X1.1(b)(1)...................................................................55

U.S.S.G. § 2X1.1(b)(2).................................................2, 52, 53, 54, 55

U.S.S.G. § 2X1.1(b)(2) cmt. background .................................54

U.S.S.G. § 3B1.1 ...........................................................................51

U.S.S.G. § 3B1.1(a).................................................................2, 48

U.S.S.G. § 3B1.1(b) cmt. n. 3........................................................50

U.S.S.G. § 3B1.1(b) cmt. n.4.........................................................51

U.S.S.G. § 3C1.1 ...........................................................................16

U.S.S.G. § 3D1.2(d).......................................................................16

U.S.S.G. § 5G1.1(a)........................................................................17

## STATEMENT OF JURISDICTION

Defendant-Appellant Sylvia P. Atkinson (Atkinson) appeals from a judgment of conviction and sentence entered on June 11, 2021.[1] ROA.323-29. Atkinson filed a timely notice of appeal on June 16, 2021. ROA.330-31. *See* Fed. R. App. P. 4(b)(2). The district court had jurisdiction under 18 U.S.C. § 3231 and this Court's jurisdiction vests under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

ISSUE 1:   Whether the evidence is sufficient to show Atkinson conspired with individuals other than the cooperating individual and undercover agent to support her conviction for conspiracy to commit bribery involving federal funds.

ISSUE 2:   Whether the government was required to establish the ultimate use of the federal funds received by the school district to support Atkinson's convictions for conspiracy and bribery.

ISSUE 3:   Whether the fictitious movie project was a "thing of value" for purposes of the bribery statute.

---

[1] The appellate record ("ROA.") is cited by the page number next to the "21-40470." stamp in the lower right corner of the document. Government Exhibits will be referred to as "GE."

1

ISSUE 4: Whether the Texas bribery statute was a proper predicate offense for the Travel Act violations.

ISSUE 5: Whether the district court denied Atkinson her right to a public trial under the Sixth Amendment by partially closing the courtroom during the testimony of the undercover agent.

ISSUE 6: Whether the district court erred in imposing a 2-level enhancement under U.S.S.G. § 2C1.1(b)(1) after finding the offense involved more than one bribe.

ISSUE 7: Whether the district court erred in imposing a 4-level enhancement under U.S.S.G. § 3B1.1(a) based on evidence Atkinson was a leader of an organization with 5 or more participants.

ISSUE 8: Whether the district court erred by denying Atkinson a 3-level downward adjustment under U.S.S.G. § 2X1.1(b)(2) as the evidence demonstrated she completed all the acts necessary to complete the substantive offense.

ISSUE 9: Whether Atkinson's within-guidelines sentence of 80 months was substantively reasonable.

## STATEMENT OF THE CASE

### I.    *Procedural history*

On June 9, 2020, a federal grand jury issued a superseding indictment charging Atkinson with 8 counts: conspiracy (count 1), bribery concerning programs receiving federal funds (count 2), and six violations of the Travel Act (counts 3-8). ROA.107-16. Atkinson pled not guilty to the offenses and proceeded to trial. ROA.952-3358.

### II.    *Case overview*

The investigation of Atkinson was conducted by the Federal Bureau of Investigation (FBI). Her conspiracy, bribery, and Travel Act violations involved the abuse of her employment positions as a school official at Brownsville Independent School District (BISD) and Rio Hondo Independent School District (RHISD). Atkinson aided others in obtaining contracts with BISD and RHISD in exchange for money or other benefits to her. Through her positions, Atkinson could assure that certain items were placed on the school board agendas for consideration. She then voted on those items, which awarded contracts to private vendors, in exchange for bribes.

The contracts provided various goods and services to the school

districts, including computer tablets, medical teleconferencing services and tutorial services. In 2018, Atkinson solicited and received a $10,000 bribe from an undercover FBI agent related to a film crew's potential use of BISD facilities for filming a purported Hollywood movie.

III.  *Evidence of Atkinson's guilt*

Much of the evidence implicating Atkinson in the 8 offenses was provided by a cooperating individual (CI), Rodrigo Moreno Fernandez, and an undercover FBI agent; the agent's identity was withheld at trial for security reasons. Many of their conversations with Atkinson were recorded and played for the jury. GE 203, 210, 233. The CI had been working for the FBI for several years and operated a legitimate media consulting firm in Brownsville. ROA.995-1003, 1450, 1605. He primarily performed marketing for local political campaigns, by way of graphic designs and video production. ROA.1004. The CI was familiar with submitting and securing bids to/from school districts. ROA.1004-05. Prior to working with the FBI to investigate Atkinson, the CI knew Atkinson personally. ROA.1019-20, 1163. He met her through local campaigns including assisting on her 2016 school board campaign; Atkinson had previously invested in a movie the CI made called The Whole. ROA.1006-

20, 1141.

In 2014, Atkinson sent the CI several text messages regarding some artwork he had done for a candidate's fundraiser. ROA.1020-21. She indicated she wanted to give $2,000 to the candidate—Cesar Lopez. ROA.1021. Atkinson asked the CI to meet at her BISD office; she met him at his vehicle and handed him a magazine with a check hidden inside the pages. ROA.1023-24. Atkinson instructed the CI to cash the check and use it for advertising costs for Lopez's campaign. ROA.1024-25, 1030. The check was from a business—X-Cal Corporation—which raised a red flag, as the CI knew corporations cannot donate to political candidates. ROA.1026. He did as Atkinson requested, he cashed the check and met with Atkinson and Lopez to give him the cash. ROA.1038, 1161. Lopez seemed surprised when the CI said the money was from Atkinson; she clarified the money was from another gentleman in Houston. ROA.1039, 1043-44.

Lopez testified at trial and verified this event. ROA.1688-1715. He acknowledged that the money should have been reported as a campaign contribution, although he was not certain whether he ever reported it. ROA.1712-14. He testified he did not know the company or person behind

5

the $2,000 check, but knew it was from Atkinson. ROA.1706-07, 1715.

In 2015, Atkinson enlisted the CI in another project while she was working at RHISD as the Assistant Superintendent. ROA.1050-51. Atkinson organized a meeting with the CI and Jamie Escobedo to discuss a bid to the school district for the sale of computer tablets. ROA.1051, 1054; GE 601. The school district was considering acquiring tablets for students to use at home for homework and distance learning. ROA.1051. Over several months Atkinson worked with Escobedo to help his company, American Surveillance, acquire the bid. ROA.1051-67. She told him how the process worked, what the school board was looking for, and gave him insider information so that he could undercut the price of the competitor's bid. ROA.1056-58. Atkinson instructed the CI to assist Escobedo with the marketing for this project. ROA.1069.

The CI learned that Escobedo missed the bid deadline for the tablets and was disqualified. ROA.1073-74. Atkinson told him she went to bat for Escobedo; she spoke to the Superintendent, and she found a way for the bid to be accepted late. ROA.1074, 1082-83, 1104. Atkinson became frustrated with Escobedo as a lot of money was at stake; she mentioned that once they got this school district, it would open the door

for business in other school districts, stating, "I don't want to lose this." ROA.1081, 1089, 1095-97, 1104-05. Atkinson coached the CI on how to help Escobedo prepare his PowerPoint presentation so the school board would like it and wanted to review the presentation before it was finalized, joking "I can't see it in public." ROA.1098-1100, 1102-05, 1113, 1125-36. The Superintendent of RHISD verified that the presentation was the most important thing in securing a bid from the school district. ROA.1653. Atkinson and Escobedo were successful and American Surveillance won the bid for the tablets in the amount of $24,500. ROA.1158-59, 1656; GE 609.

In 2016, Atkinson ran for the BISD Board of Trustees, and the CI assisted her with media consulting. ROA.1141. She told him he would be receiving money from Jamie Escobedo and Joe Salazar for a political poll. ROA.1142-50; GE 606. She later clarified it was a campaign contribution, but she wanted the CI to invoice them for a poll so their company could write him a check. ROA.1143, 1151. American Surveillance paid the CI $3,000 with a check notation of a PowerPoint presentation which was fictious, as the CI did not perform this work. ROA.1151, 1154-57. At the direction of Atkinson, the CI negotiated the check and learned the money

was meant for him, as a kickback for his help in securing the tablet contract for Escobedo. ROA.1157-60, 2570. Escobedo did not cooperate in the FBI's investigation of Atkinson. ROA.2571.

There was evidence of another scheme involving the company iTutor, where Atkinson paid an employee, Adela Garza, to attend meetings of the school districts; the plan was for Atkinson to assist iTutor as a consultant in securing a bid for their tutoring programs and then receive a commission on any sales that were made. ROA.3314-25, 3394-95, 3472.

In 2018, the CI was instructed by the FBI to set up a meeting between Atkinson and the undercover agent. ROA.1163-65. Atkinson first met with the undercover agent on December 18, 2018. ROA.1163-65, 1172, 2023-226; GE 203. The agent pretended to be a movie producer from India who was interested in using school facilities in the Brownsville area for his movie. ROA.1178, 2023. The agent met with Atkinson to inquire whether Atkinson could get an item placed on the school board agenda and get it passed in exchange for a bribe of $10,000. ROA.1208-09, 2028-42. Atkinson assured the agent she would have no problem getting it approved and represented she had all 7 votes needed

for passage. ROA.1207, 2040-41, 2056-58. Atkinson laid out her plan to the agent on how she would accomplish the task. ROA.2056-61.

Atkinson revealed she knew what the board was looking for in terms of language to include in the bid. ROA.2060. She offered to oversee the bid process and enlisted the CI as their "front man." ROA.1179, 1199. While it would appear to the school board that the CI's company (Pink Ape Media) was the entity filing the bid, it was the agent, with Atkinson's assistance. ROA.2056-59, 2089-90. Thus, the CI would be the shield for their impropriety. ROA.2059, 2087.

The parties met again the following day at the CI's office. ROA.1181, 2062; GE 210. Atkinson reiterated that she wanted to use the CI as the face of the project to the school board and guaranteed the agent the item would be placed on the agenda with 100% support passing. ROA.2072-73. She specifically addressed the 7-member school board and represented she had the votes to get it passed on the February agenda. ROA.1207, 1281, 1289. Atkinson told the agent she would like him to consider buying the CI's film project, The Whole, for which she had invested. ROA.1208-09. She and the CI had discussed marketing the sale of the film for $750,000, of which she would receive approximately 30%.

ROA.1012, 1167.

The agent offered Atkinson a partial payment of the agreed upon bribe, $4,000 in cash, which she accepted. ROA.1242, 2078-79, 2082. Atkinson told the agent the money was not for her; she was giving the money to other people that she needed to take care of. ROA.1209, 1212, 2080. The agent believed Atkinson was indicating to him that she had other co-conspirators involved. ROA.2080-81, 2083-84. The agent inquired further, asking Atkinson if he needed to meet with these other co-conspirators, and offer them payment personally. ROA.2081. Atkinson assured the agent he did not need to meet with or bribe the others, as she would take care of them. ROA.2081. The agent asked Atkinson about paying the CI, as he should get a finder's fee for introducing them; Atkinson agreed the agent should pay him, indicating the CI is not one of the co-conspirators she was paying with her $4,000. ROA.1211, 2083. They agreed when she completed the task, she would receive the remaining $6,000. ROA.2084-85.

Atkinson indicated to the CI that she had drafted the item for the agenda styled as a "letter to request the school facilities be used in a film project." ROA.1214, 1217, 1220. Atkinson acknowledged to him that "if

you work for BISD, you can't help with or do bids for BISD." ROA.1252-54. Atkinson had many discussions and communication with the CI about the bid, wording, and how to place the item on the agenda. ROA.1256-58. She also told him she had talked to 3 other board members about the item to get their vote. ROA.1259-60.

At the direction of the FBI, the CI purposely missed the filing deadline to place the movie project request on the February agenda. ROA.1270-71. This angered Atkinson who had assured the agent that it would be on the agenda that month. ROA.1272-73. In her attempt to fix the problem, Atkinson called Pat Perez, the school board secretary. ROA.1274-75. Atkinson lied to Pat and told her that the CI had called her and realized that his email bid submission had been rejected by the computer server and it came back to his email spam folder. ROA.1275-76. Atkinson was aware that an item could not be placed on the agenda without the request letter. ROA.1283, 1920. Atkinson instructed the CI to send the email to request the school facilities for the movie project to the Superintendent, with a blind email copy to her. ROA.1291-92, 1298-99, 1964-66; GE 221, 222.

Atkinson reached out to Superintendent Sylvia Hatton, inquiring

11

about the status of the CI's request. ROA.1954-57. Atkinson pressured Dr. Hatton to add the item to the February agenda. ROA.1957. Atkinson stressed to her how even though the CI missed the filing deadline, she, in her role as Superintendent, could add the request to the agenda. ROA.1957. Dr. Hatton initially said no, feeling it would be negligent to rush it and thinking the item should wait to be placed on the March agenda. ROA.1959-60. After pressure from Atkinson, Dr. Hatton added the request as a pending item to discuss at an upcoming draft agenda meeting. ROA.1963.

At the meeting to finalize the February agenda, Dr. Hatton gave a summary of what she knew about the movie project from the CI's request. ROA.1972. Another board member, Minerva "Minnie" Pena, suggested they put the item off until the next board meeting. ROA.1973. Atkinson became very angry; she raised her voice, her face got red and as she pulled her chair back from the table, her chair fell over. ROA.1973. She got into a heated argument with Pena regarding the movie project item. ROA.1973-75. Pena asked Atkinson to calm down and agreed to include the item in the February agenda. ROA.1975-78; GE 227.

On February 12, 2019, the school board agenda included Item No.

10, the movie project – to recommend approval to collaborate with Pink Ape Media on a feasibility plan for utilizing district facilities on a film project. ROA.1763-64. It was explained as a request to survey the facilities for use in a movie, with the intention of the company later submitting a bid for pay for the use of school facilities in the movie. ROA.1764-65. In addition to this item, an item regarding the HOPE charity was included, sponsored by Atkinson. ROA.1745-47. It was Item No.3 – for the board to consider allowing the HOPE organization to use a school facility for the daily cost of $1,500. ROA.1747. Minnie Pena was a known supporter of this organization. ROA.1748.

Atkinson spoke in support of the movie project item, pretending to be unfamiliar with it. ROA.1313, 1765-72. The item passed 7-0; the board was swayed by the "feel-good" story of a movie being based in their community. ROA.1314, 1774. Atkinson told the CI that she had to give Minnie two votes on other items in exchange for Minnie's vote on the movie item. ROA.1315-16. She also indicated another board member, Erasmo Castro, was not on board and she had to persuade him to vote for the item. ROA.1315-16, 1328-29.

The agent returned to Brownsville on February 19, 2019, to pay the

13

remainder of the bribe to Atkinson. ROA.2095. They met at the CI's office and Atkinson accepted the $6,000. ROA.2096-97, 2627. Atkinson told the agent and the CI that $2,000 of it was being given to a man for a donation to the HOPE charity, as a payment for the vote Minnie provided for the movie project. ROA.1329-30, 2104-06, 2182-83.

Atkinson was looking to extend her relationship and financial benefits with the agent. ROA.2109-10, 2114-348. She lined herself up for more bribes with the agent on the movie production, assuring him she would be a part of future approval process in the next phase of their plan. ROA.2109-11. Atkinson also gave the agent a blue-ray DVD of the movie The Whole. ROA.2096-97; GE 233. Atkinson asked him to take the copy of the movie to his investors in India to see if they would buy it. ROA.2096, 2111. The agent assured her he would pitch the movie for their asking price of $750,000. ROA.2112.

After the events of February 2019, the FBI contacted Atkinson for an interview. ROA.2631-54. In her initial interview with the FBI, Atkinson claimed her business relationship with the agent was proper, as a community consultant. ROA.2634-35, 2655. However, in a subsequent interview, Atkinson acknowledged she took the $10,000 from

the agent in exchange for getting the movie project item on the BISD agenda and making sure it passed. ROA.2657. She also admitted it was unlawful for a board member to accept money from interested parties in exchange for putting an item on the board agenda and getting it passed and she should have filed a conflict of interest with BISD. ROA.2557, 2785, 2788, 3356.

Several witnesses provided testimony at trial that Atkinson's actions in these endeavors constituted a conflict of interest of which she was required to disclose in writing. ROA.1643-47, 1658-64, 1812-13, 1825-26, 1834-35, 1896, 1900-01. At trial, Atkinson testified her admission of wrongdoing to the FBI was limited to the ethical rules of the school board. ROA.3114-15. She maintained that she did not believe she violated any laws by agreeing to assist the FBI agent in placing the movie project before the school board for a payment. ROA.3125.

On November 4, 2020, the jury returned a guilty verdict. ROA.323. They unanimously found that Atkinson was guilty of conspiracy, bribery and six violations of the Travel Act. ROA.252-59.

IV.   *PSR & sentencing*

A PSR was prepared using the 2018 Guidelines Manual. ROA.5401-32 (PSR ¶ 83). Atkinson's base offense level was calculated at 14, pursuant to U.S.S.G. § 2C1.1(a)(1) because Atkinson was a public official. ROA.5419 (PSR ¶ 84).[2] Several levels were added because the offense involved more than one bribe, the value of the benefit to be received was more than $40,000 but less than $95,000, the offense involved a public official in a high-level decision-making position, the scheme involved five or more participants, and Atkinson willfully obstructed or impeded the administration of justice during the prosecution of these offenses. ROA.5419 (PSR ¶¶ 85-87, 89-90). *See* U.S.S.G. §§ 2C1.1(b)(1), 2C1.1(b)(2), 2C1.1(b)(3), 3C1.1. This brought Atkinson's total offense level to 32. ROA.5420 (PSR ¶ 94).

Atkinson's criminal history score was zero, establishing a criminal history category of I. ROA.5420 (PSR ¶¶ 96-99). Based on a total offense level of 32 and a criminal history category of I, the guideline range of imprisonment was 121-151 months of imprisonment. ROA.5430 (PSR

---

[2] Atkinson's eight counts were grouped because they all involve substantially the same harm. ROA.5430 (PSR ¶¶ 158, 161). *See* U.S.S.G. § 3D1.2(d).

¶ 158). The statutorily authorized maximum term of imprisonment was 120 months. U.S.S.G. § 5G1.1(a). ROA.5430 (PSR ¶¶ 157, 159). Thus, the guideline imprisonment range became 120 months. ROA.3566, 5430 (PSR ¶ 159).

After several rulings at sentencing, Atkinson's guideline range was 78-97 months. ROA.3542-43, 5435. The district judge sentenced Atkinson to 80 months' imprisonment as to count 2, 60 months' imprisonment as to counts 1 and 3-8, all to be served concurrently, followed by 3 years' supervised release. ROA.3565-66, 3569-70.

## SUMMARY OF THE ARGUMENT

Issues I-IV: The evidence presented at trial was sufficient to support Atkinson's multiple convictions. The government presented ample evidence that Atkinson conspired with other individuals, in addition to the cooperating individual and undercover agent. The government was not required to establish the ultimate use of the federal funds received by the school district and the evidence demonstrated the movie project was a "thing of value." Atkinson's last sufficiency challenge is misguided as the Texas bribery statute is a proper predicate offense for violations of the Travel Act.

<u>Issues V-VIII</u>: The district judge was faithful to Supreme Court authority when it considered and balanced the interests of the defendant's right to a public trial and the safety concerns of the agent when it partially closed the courtroom during his testimony. In addition, Atkinson has failed to show the district judge committed clear error in the three sentencing enhancement issues brought before this Court. The judge cited to evidentiary record examples in each instance to support his ruling.

<u>Issue IX</u>: Contrary to Atkinson's contentions, the court appropriately balanced the 18 U.S.C. § 3553(a) sentencing factors. Atkinson's last argument on appeal reflects nothing more than a disagreement with the court's balancing of the sentencing factors, which is insufficient to establish an abuse of discretion and is not a sufficient ground for reversal.

# **ARGUMENT**

## I.    **The evidence is sufficient to support Atkinson's convictions for conspiracy, bribery, and violations of the Travel Act.**

### A.    *Standard of Review*

At the close of the government's initial case, Atkinson's attorney moved for a judgment of acquittal on all counts, and the district court denied the motion. ROA.2890. After the defense presented witnesses and the government presented rebuttal witnesses, Atkinson again moved for a judgment of acquittal on specific grounds. ROA.3366-72. She challenged the evidence with respect to the federal benefit element (second issue on appeal) and the co-conspirators involved (first issue on appeal). ROA.3366-70. However, she made a different argument at trial regarding the "thing of value" (third issue on appeal) and only made a general motion regarding the Travel Act charges (fourth issue on appeal). ROA.3368-69, 3393. *See United States v. Huntsberry*, 956 F.3d 270, 282 (5th Cir. 2020) (concluding that particularized sufficiency objection on another ground waived the *Rehaif* argument; thus, it was reviewed for plain error only).

When a defendant makes a timely motion for acquittal, review for

sufficiency of the evidence is de novo but still highly deferential to the verdict; all reasonable inferences are made in favor of the jury's verdict and the conviction must be affirmed unless no rational jury could have found the offenses' essential elements proven beyond a reasonable doubt. *United States v. McLaren*, 13 F.4th 386, 400 (5th Cir. 2021).

While an argument can be made that Atkinson's general objection and failure to raise the specific arguments in her third and fourth issues on appeal results only in plain error review, the government will defer to the Court on that matter as Atkinson's arguments fail even under de novo review.[3] *See United States v. Kieffer*, 991 F.3d 630, 635 (5th Cir.), *cert. denied*, 142 S. Ct. 297 (2021); *United States v. Brace*, 145 F.3d 247, 255-58, 258 n.2 (5th Cir. 1998) (en banc) (suggesting even when a defendant preserves a general challenge to the sufficiency of the evidence, she must still independently preserve the legal sub-issue).

This Court should affirm the conviction "if a reasonable trier of fact could conclude from the evidence that the elements of the offense were

---

[3] *See McClaren*, 13 F.4th at 408-09 (discussion regarding proper standard of review for sufficiency of the evidence); *United States v. Haggerty*, 997 F.3d 292, 296-97 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 759 (2022) (discussion regarding a general sufficiency-of-the-evidence objection and preservation of underlying legal arguments).

established beyond a reasonable doubt." *United States v. Delgado*, 256 F.3d 264, 273 (5th Cir. 2001). This Court does not evaluate the weight of the evidence or the credibility of the witnesses, but rather views the evidence in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict. *Id.* at 273–74. This Court's review of the sufficiency of the evidence is the same for circumstantial evidence as it is for direct evidence. *United States v. Ibarra–Zelaya*, 465 F.3d 596, 602 (5th Cir. 2006).

B.    *The evidence is sufficient to show Atkinson conspired with other individuals, in addition to the CI and undercover agent. (Responsive to Issue I.)*

Conviction under 18 U.S.C. § 371 requires proof of "(1) an agreement between two or more persons to purse an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy." *United States v. Richard*, 775 F.3d 287, 294 (5th Cir. 2014) (quoting *United States v. Coleman*, 609 F.3d 699, 704 (5th Cir. 2010)).

"To be a conspiracy, an express, explicit agreement is not required; a tacit agreement is enough." *United States v. Shoemaker*, 746 F.3d 614,

623 (5th Cir. 2014) (quoting *United States v. Westbrook*, 119 F.3d 1176, 1189 (5th Cir. 1997)). "A conspiracy may be proven with only circumstantial evidence or 'inferred from a concert of action.'" *Id.* (quoting *United States v. Virgen-Moreno*, 265 F.3d 276, 284–85 (5th Cir. 2001)); *see also United States v. Njoku*, 737 F.3d 55, 63 (5th Cir. 2013) (circumstantial evidence can prove knowledge and participation). Because secrecy is the norm in an illicit conspiracy, the elements of the offense may be established solely by circumstantial evidence. *United States v. Espinoza–Seanez*, 862 F.2d 526, 537 (5th Cir. 1988).

Atkinson challenges her conspiracy conviction arguing the government failed to demonstrate she conspired with others, in addition to the undercover agent and the CI, as alleged in the indictment. ROA.108-109. Appellant's brief 20-24. *See Richard*, 775 F.3d at 292 (holding indictment for bribery sufficient even though it did not include which transaction was the subject of a bribe or the name of the person involved in the bribe because it tracked the language of the statute).

There is no requirement that a co-conspirator know all the details of the unlawful enterprise or the exact number or identity of other members of conspiracy. *United States v. Greenwood*, 974 F.2d 1449, 1461

(5th Cir. 1992). The jury was charged that neither the CI nor the FBI agent could be co-conspirators under the federal conspiracy statute. ROA.2181. Thus, the government needed to show Atkinson conspired with one other person to commit the crime.

Viewing the evidence in the light most favorable to the jury's verdict, the evidence demonstrates there was a conspiracy to commit federal program bribery between Atkinson and other individuals. She repeatedly worked in concert with many others to accomplish her tasks in this conspiracy. *See United States v. Chapman*, 851 F.3d 363, 377 (5th Cir. 2017).

Both the CI and the undercover agent testified regarding numerous conversations they had with Atkinson where she revealed her use of other individuals to accomplish the federal bribery scheme. In his second meeting with Atkinson, she told the agent she needed to use a portion of the initial bribe amount to pay other people, and specifically mentioned the CI was not one of them. When the agent pressed Atkinson to see if he should meet with the other individuals and pay them personally, she assured him she would pay them.

When Atkinson encountered issues with the movie project getting

on the agenda, she faced push back from two board members. Atkinson had a very public argument with one board member, Minnie Pena, who was not in favor of putting the movie project on the February agenda. Another board member and the board secretary testified about observing this altercation. Atkinson relayed to the agent and CI she had to persuade some board members.

Pena ended up voting for the item at the agenda meeting and Atkinson explained to the agent and the CI that she had to buy her vote, by way of voting for two of Pena's projects. When Atkinson received the second bribery payment, she told the agent and the CI that she had to pay a man $2,000 to the HOPE charity, as a payback for Pena's vote on the movie project. There was ample evidence that other people were involved in this conspiracy.

The jury heard further evidence regarding Atkinson's actions with Jamie Escobedo to obtain the winning bid for the computer tablets from RHISD. After she coached him and instructed the CI to assist him, Escobedo won the bid for $24,500 and gave a $3,000 kickback to the CI, through Atkinson. There was also evidence of the iTutor scheme where Atkinson paid Adela Garza to act as the front for securing the tutoring

programming bid so that Atkinson could receive a commission.

Atkinson claims there was no meeting of minds between the co-conspirators. But the evidence disproves this claim, and the jury rejected this same argument. Tacit agreement is enough, and in this case, the jury not only had trial testimony regarding the roles of co-conspirators, but the recordings also established that Atkinson had a clear understanding of the terms of the bribes and the duties of each of her co-conspirators. GE 203, 210, 233. *See United States v. Martinez*, 900 F.3d 721, 728 (5th Cir. 2018) (a jury may infer that a conspiracy exists based on the presence, association, and concerted action of the defendant with others).

Based on the extensive evidence of "concert of action" amongst Atkinson and others, the jury could reasonably infer an agreement to participate in this crime. *United States v. Romans*, 823 F.3d 299, 311 (5th Cir. 2016).

C.    *The government was not required to establish the ultimate use of the federal funds received by the school district. (Responsive to Issue II.)*

Atkinson contends the evidence was insufficient to support both her conspiracy and bribery convictions because the government did not offer evidence regarding the use of the federal funds by the school district.

Appellant's brief 25. In support, she cites two out of circuit cases that are distinguishable.[4] Appellant's brief 26-27. Fifth Circuit authority supports that the evidence was sufficient.

Supreme Court authority dictates that the bribe does not have to affect federal funds before the bribe violates the federal bribery statute. *See Salinas v. United States*, 522 U.S. 52, 57 (1997). The bribery statute requires the government to demonstrate that Atkinson, as an agent for the school board, sought to solicit a bribe for a benefit, rewarded in connection with the school board—which received more than $10,000 in federal assistance in a one-year period. *See* 18 U.S.C. § 666(a)(1)(B). The Supreme Court has held that the bribery statute involving federal funds does not require a nexus between the criminal activity—the bribe or kickback—and the federal funds. *Sabri v. United States*, 541 U.S. 600, 605 (2004); *see also United States v. Lipscomb,* 299 F.3d 303, 309-14 (5th Cir. 2002) (clarifying nexus is required between misconduct and agency receiving federal funds; distinct from nexus between misconduct and

---

[4] *United States v. McLean*, 802 F.3d 1228 (11th Cir. 2015) (government failed to prove federal benefit under bribery statute because the agency received the money from the city, who received it from the federal government); *United States v. Bravo-Fernandez*, 913 F.3d 244 (1st Cir. 2019) (parties' pretrial stipulation did not establish that Commonwealth of Puerto Rico received a benefit of more than $10,000 from federal monies).

federal funds themselves). In holding so, the Supreme Court noted that the design of § 666 was to "protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery." *Sabri*, 541 U.S. at 606.

Consistent with this principle, the government does not have to demonstrate the ultimate use of the federal funds, as alleged by Atkinson. This Court has held that as long as the agency received $10,000 per year from a federal program, its agents are subject to prosecution under § 666. *United States v. Westmoreland*, 841 F.2d 572, 577 (5th Cir. 1988); *United States v. Moeller*, 987 F.2d 1134, 1137 (5th Cir. 1993).

In this case, the Deputy Commissioner of the Texas Education Agency (TEA) testified that all public schools in Texas are managed by the TEA. ROA.1844-47. He stated that the Department of Education provides federal funding to the school districts through the TEA; between the years 2014-2020, RHISD received approximately $3 million annually from the federal government and BISD received between $90-120 million annually from the federal government. ROA.1848-50. Both are clearly more than the yearly threshold of $10,000 from federal funds.

In *United States v. Richard*, the Fifth Circuit evaluated a claim by

27

a school board member who was found guilty of bribery and conspiracy to commit bribery. 775 F.3d 287 (5th Cir. 2014). The defendant challenged the sufficiency of the evidence regarding the federal benefit element of the offense. *Id*. at 293. The government presented testimony from the Deputy Superintendent for Finance for the Louisiana Department of Education. *Id*. at 293-94. She explained that the school district received over $18 million in federal funds in a one-year period. *Id*. This Court held that the jury could have reasonably relied on that testimony in determining the federal benefit element was met. *Id*. at 294. *See also United States v. Reyes*, 239 F.3d 722, 726-34 & n.5. (5th Cir. 2001) (affirming § 666 conviction of city council members who were bribed to award contracts to a particular individual; even though government noted a federal loan would support the project going forward, this Court explicitly declined to rely on that fact, stating instead that federal support of the city departments justified prosecution).

The government presented sufficient evidence of the federal benefits element; additional evidence tracing the federal funds was not required. *See United States v. Marmolejo*, 89 F.3d 1185, 1189 (5th Cir. 1996) (federal benefit construed broadly); *Richard*, 775 F.3d at 294.

D.   *Atkinson's complaint that the fictitious movie project was not a "thing of value" is misguided as Fifth Circuit precedent allows for intangible items to have value. (Responsive to Issue III.)*

Atkinson challenges the jury's finding that the movie project was a "thing of value" of $5,000 or more under the bribery statute because it was not a real movie project. She complains the term "thing of value" is ambiguous and the rule of lenity favors her position. Appellant's brief 30. She does not challenge the value of $5,000, just that a fictious item cannot have value.

This Court recently visited the issue in the prosecution of a state judge and looked to sister circuits' treatment of § 666(a) finding there are multiple valuation methods in use. *United States v. Delgado*, 984 F.3d 435, 448 (5th Cir. 2021). On appeal, Delgado challenged whether his award of personal recognizance bonds to criminal defendants, after receiving $5,500 from their attorney, was a "thing of value" under the bribery statute. This Court found that the district court did not err in valuing the PR bonds at their "face value," reasoning the value the clients received from the bonds was intertwined with their liberty interests, which is difficult to quantify and the face value of the bonds was the amount the clients were willing to risk forfeiting the secure bonds. *Id.* at

448.

Fifth Circuit precedent reveals the term "thing of value" is "broad in scope and contains no language restricting its application to transactions involving money, goods, or services." *Marmolejo*, 89 F.3d at 1191 (conjugal visits were transactions involving something of value). This Court in *Marmolejo* also noted that the statute does not require the person giving the agent the bribe, in this case the undercover officer, to value the transaction at $5,000 or more. *Id*. Thus, the plain meaning compels the conclusion that a "thing of value" includes intangible items. *Id.*

This interpretation is based upon recognition that monetary worth is not the sole measure of value. *See United States v. Hines*, 541 F.3d 833, 837 (8th Cir. 2008) (the plain language of the statute does not require a restricted, technical interpretation that would prevent the consideration of the "thing's" value to third parties with an immediate interest in the transaction, in this case money judgments and foreclosed property values); *United States v. Nilsen*, 967 F.2d 539, 542–43 (11th Cir. 1992) ("anything of value" can include a witness's testimony); *United States v. Girard*, 601 F.2d 69, 71 (2d Cir. 1979) (holding that term "thing of value,"

when used in criminal statutes, includes intangibles, such as information, amusement, sexual intercourse, the promise of sexual intercourse, the promise to reinstate an employee, and an agreement not to run in a primary election).

Also of importance, the test of value is whether the recipient subjectively attaches value to the thing received. *See United States v. Picquet*, 963 F.2d 54, 55 (5th Cir. 1992). Atkinson clearly thought the movie project was worth over $5,000, as evidenced by her acceptance of a bribe in the amount of $10,000. ROA.3471. *See Delgado*, 984 F.3d at 448 (bribe amount can be probative of the transaction value, for purposes of satisfying the $5,000 minimum transactional value element for federal program bribery); *see also United States v. Owens*, 697 F.3d 657, 659 (7th Cir. 2012) (bribe amount may suffice as proxy for value); *United States v. Fernandez*, 722 F.3d 1, 13 (1st Cir. 2013) (value of the bribe may be relevant in determining the value of the bribe's objective). Atkinson's expectation of the successful movie project bid was tied to her desire for the agent to buy the movie The Whole, where she could make even more money—her true objective.

The movie project was an intangible item, one that Atkinson

31

believed to have present value and expected to have future value, whether it came to fruition or not. *See Nilsen*, 967 F.2d at 543 ("anything of value" can include a witness's testimony, even though it was not needed after the defendant pled guilty); *United States v. Williams*, 705 F.2d 603, 622–23 (2d Cir. 1983) (holding that term "anything of value" can apply to stock that, although it had no actual value, the defendant expected it to have value); *McDonald v. State*, 329 So.2d 583, 587–88 (1975) (holding the promise of sexual intercourse is a "thing of value" under state bribery statute). The government presented ample evidence that the movie project was a "thing of value" to support Atkinson's conviction for bribery.

E.    *The evidence is legally sufficient to support Atkinson's Travel Act convictions as the Texas bribery statute was a proper predicate offense. (Responsive to Issue IV).*

Atkinson challenges the sufficiency of the evidence supporting her Travel Act convictions. Atkinson was charged with six counts of violating the Travel Act, specifically that she had used and caused to be used facilities of interstate and foreign commerce, the telephone, with the intent to promote, manage, establish and carry on to facilitate the promotion, management, establishment, and carrying on of an unlawful

activity, that being bribery of a public official in violation of the laws of the State of Texas, Tex. Penal Code § 36.02(a), and thereafter performed and attempted to perform acts in furtherance of the unlawful activity, in violation of 18 U.S.C. § § 1952(a), (b). ROA.113-14.

"Unlawful activity" means extortion, bribery, or arson in violation of the laws of the state in which committed or of the United States. 18 U.S.C. § 1952(b)(i)(2). The indictment listed each occurrence, who Atkinson contacted (the agent or CI), how she used the telephone to contact them (call or text), and the subject matter of the correspondence to show the use of facility in interstate commerce. ROA.113-14.

For the first time on appeal, Atkinson claims that bribery under Texas law is not a generic bribery for purposes of the Travel Act. She argues she could not have committed the federal Travel Act offense that requires specific intent because Texas bribery offense can be committed with knowledge. *See* Tex. Penal Code § 36.02(a). Appellant's brief 35-36 (implying the state elements of bribery need to be proved for a Travel Act violation). In support, she cites *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), for the proposition that "a court must apply the categorical approach when

deciding whether a state statute qualifies as a predicate under the Travel Act." Appellant's brief 33-35.

This is not true. These are not cases evaluating violations of the Travel Act. They are cases that evaluate whether a defendant's prior conviction falls within the meaning of a sentence enhancement statute. *Taylor*, 495 U.S. at 600-02, *Shephard*, 544 U.S. at 17.[5]

Atkinson's characterization of the proof needed for her Travel Acts counts is mistaken and the argument flowing from that faulty premise is without merit. The Travel Act is a substantive offense that in-and-of-itself punishes individuals for using facilities of interstate or foreign commerce to further certain unlawful activities. *United States v. Jenkins*, 943 F.2d 167, 173 (2d Cir. 1991). To establish a Travel Act violation the government must prove that the defendant used a facility of interstate or foreign commerce to "make easier or facilitate" the intended unlawful activity. *Id; see also United States v. Smith*, 789 F.2d 196, 203 (3d Cir. 1986).

---

[5] Taylor cites *Perrin v. United States,* 444 U.S. 37, 45 (1979) (a Travel Act case) for the proposition that Congress meant for burglary to be used in a generic sense, as the way most states use it. *Taylor*, 495 U.S. at 598. But Atkinson has wholly failed to present authority that the underlying offense in the Travel Act should be evaluated under the categorical approach.

The Fifth Circuit has weighed in on this federal statute and how evidence of the underling unlawful activity is reviewed. *See United States v. Millet*, 123 F.3d 268 (5th Cir. 1997); *United States v. Jones*, 642 F.2d 909 (5th Cir. 1981). The Travel Act was one of several bills enacted by Congress to aid the states in the battle against organized crime. *Millet*, 123 F.3d at 277-78 (*citing Perrin v. United States*, 444 U.S. 37, 41–42 (1979)). Because the definition of the unlawful activity refers to both state as well as federal offenses, it is clear Congress intended for the Travel Act to supplement state authority in battling organized crime problems. *Id.* It is also well settled that under the principles of federalism, the federal courts may not assume jurisdiction over state offenses. *Id.*

Therefore, it clearly follows that if a state law offense were to serve as the underlying "unlawful activity" for the Travel Act and the law is to supplement state law rather than burden it, there can be no requirement for a conviction of the underlying unlawful activity. *Millet*, 123 F.3d at 278; *United States v. Nardello*, 393 U.S. 286, 290–95 (1969) (discussing the use of a state law as the underlying unlawful activity); *Jones*, 642 F.2d at 913 (defendant convicted of Travel Act violation without underlying conviction of illegal organized gambling).

The Travel Act is to be construed broadly, so the lack of a precise fit does not matter. *See United States v. Smilowitz*, 974 F.3d 155, 162-63 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 2570 (2021) (NY's vote-buying offense fell within the generic definition of bribery and constituted a Travel Act crime of bribery even though the NY statute required the payee to be a public servant); *United States v. Walsh*, 700 F.2d 846, 858 (2d Cir. 1983) (defendants challenged their Travel Act conviction on the basis that the applicable New Jersey bribery statute failed to specifically charge an "intent to corrupt official action;" the Court held that even though the statute was technically more of a gratuity/corrupt solicitation statute, not exactly a bribery statute, it still prescribed the conduct that fits within the broad generic description of bribery, and thus was properly charged to the jury as a Travel Act predicate of bribery).

Contrary to Atkinson's contention, it is not necessary for the underlying unlawful activity to mirror the mental state of the Travel Act. In fact, the Travel Act requires a higher burden: the government had to prove Atkinson had the specific intent to use facilities of interstate commerce, the telephone, with the intent to promote, manage and carry out the unlawful activity of bribery. The jury heard an abundance of

evidence regarding Atkinson's actions and how she, by accepting and paying bribes, performed acts in furtherance of the unlawful activity of bribery. *See* 18 U.S.C. § § 1952(a), (b).

**II.    Contrary to Atkinson's claim, the district court did not deny her right to a public trial under the Sixth Amendment by partially closing the courtroom during the testimony of one witness. (Responsive to Issue V.)**

A.    *Standard of Review*

This Court reviews a defendant's claim that the district court violated her constitutional right to a public trial de novo. *United States v. Osborne*, 68 F.3d 94, 98 (5th Cir. 1995).

B.    *The court closure during the testimony of one witness constitutes a partial closure, and in this case the live audio feed made available to the public in a nearby courtroom was justified as a reasonable alternative.*

Atkinson challenges the district court's decision to close the courtroom during the testimony of one witness, the undercover FBI agent. The government filed a motion for protective order prior to trial, asking the district court to allow the agent to testify outside the view of the public. ROA.5480-97. The government conveyed a concern that a substantial risk of danger existed for the agent and his family were his identify to be revealed in open court; the agent was involved in national

security investigations infiltrating terrorist organizations. ROA.2017-18, 5380-96. The defense responded and opposed this request. ROA.5653-62.

The district court ruled that the agent could testify in disguise and the courtroom would be closed to public during his testimony. ROA.445-50, 2017-21. Prior to the undercover agent's testimony, the courtroom was closed to the public; he was allowed to enter the courtroom through a back entrance and utilize a light, physical disguise. ROA.2017-19. The parties addressed him as "undercover officer" at trial. ROA.2021, 2144. He testified about his training and position as an undercover agent and provided testimony regarding his three meetings with Atkinson that established the elements of the conspiracy, bribery, and Travel Act violations.

The Sixth Amendment provides the right to a public trial for criminal proceedings. U.S. Const. amend. VI. Open trials are strongly favored, but the right is not absolute, and must be balanced against other interests essential to the administration of justice. *Osborne*, 68 F.3d at 98.

The Supreme Court has provided a four-pronged test as to when court closure is appropriate, the party seeking to close the hearing must:

1) advance an overriding interest that is likely to be prejudice; 2) the closure must be no broader than necessary to protect that interest; 3) the trial court must consider reasonable alternatives to closing the proceeding; and 4) it must make findings adequate to support the closure. *Waller v. Georgia*, 467 U.S. 39, 48 (1984). All four prongs of the test have been met in this case.

With regard to the first *Waller* factor, the showing of an "overriding interest" is lessened to a "substantial reason" when the courtroom is only partially closed, as opposed to a total closure. *See United States v. Cervantes*, 706 F.3d 603, 611-12 (5th Cir. 2013). Atkinson claims the higher standard applies because a total closure occurred. Appellant's brief 39-40. She is mistaken.

Whether a closure is considered a total closure or a partial closure depends on balancing numerous factors, including the closure's duration, whether the public can learn what transpired during the closure, whether the evidence presented during the closure was essential versus merely cumulative or ancillary, and whether selected members or all spectators were barred from observing the courtroom proceedings. *Bowden v. Keane*, 237 F.3d 125, 129-30 (2d Cir. 2001).

This Court affirmed the closure of a courtroom during the testimony of one witness, a 12-year-old victim, who would suffer emotional harm from the experience. *See Osborne*, 68 F.3d at 98 (holding it was only a partial closure because all but one of the existing spectators remained during the victim's testimony). The Second Circuit has held a court closure for one witness was a partial closure, as the public could learn what transpired when the courtroom was closed, through transcripts of the officer's testimony made available. *Ayala v. Speckard*, 131 F.3d 62, 70-72 (2d Cir. 1997) (en banc).

Similar to the facts in this case, the Second Circuit has addressed the issue of a defendant's right to a public trial when reviewing a revocation of supervised release case where the district court allowed an undercover officer to testify in a physical disguise behind an opaque screen blocking the officer from public view. *United States v. Fernandez*, 590 F. App'x. 117, 119 (2d Cir. 2015) (unpublished).[6] He could be heard, but not seen. The Court assumed that the measure taken to hide the undercover officer's identity constituted only a partial closure, but held

---

[6]  Although unpublished opinions are not binding on this Court, they may be instructive and persuasive. *United States v. Cluff*, 857 F.3d 292, 299 (5th Cir. 2017).

even under the higher standard, the State has an overriding interest in protecting the identity of its undercover officers. *Id.*

Regardless of which standard applies, the first prong has been met. The undercover agent was one of 16 witnesses who testified in Atkinson's trial. In its wisdom, the district court ordered the audio feed of his testimony to be played in a nearby courtroom, so that nothing was kept from the public. *See Bowden*, 237 F.3d at 130 (holding the exclusion of the public during an undercover officer's testimony was a partial closure because the transcript was available to the public and testifying in open court where public spectators can see the undercover agent's physical likeness puts himself, his family, and his current and future operations at risk); *Rodriguez v. Miller*, 537 F.3d 102, 110 (2d Cir. 2008) (the State has an "overriding interest" in protecting the identity of its undercover officers); *People v. Sanabria*, 301 A.D.2d 307, 315 (1st Dept. 2002) (risk to undercover police officer was an "overriding interest" justifying trial court's decision to pace narrowly tailored measure restricting public access to hearing).

As to the second and third *Waller* prongs, the partial courtroom closure in this case was no broader than necessary to protect the identity

of the undercover agent while preserving the right to a public trial. The district court employed the most reasonable alternative to serve all interests. The public was not completely excluded from the proceeding. Although the physical courtroom was closed during the agent's testimony, the public could follow his testimony in a nearby courtroom via an audio feed in real time. ROA.2018. This served to keep the public apprised of the proceedings, while also preventing the public disclosure of the undercover agent's identity. The partial closure was narrowly tailored to protect the Atkinson's right to a public trial. *See Osborne*, 68 F.3d at 99; *Bowden*, 237 F.3d at 130-31.

In its order, the district court was keen to the fourth prong, giving the matter significant thought and providing a detailed rationale supporting the partial closure. ROA.445-50. The district court stated that it had reviewed all the filings on the issue and the applicable law. ROA.446. Then the judge held: "In support of this ruling on the motion for protective—on the Motion for Protective Order, I do find as follows:

> Disclosure of the UC witness' true identity would jeopardize ongoing and future undercover investigations and the Government's undercover investigative procedures and would create a real and substantial risk of danger to the UC witness and his family if the UC witness' identity is disclosed.

42

> The protective measures that the Court has ordered are necessary to protect from disclosure the true identity of the UC witness. These measures will not unduly prejudice the Defendant's right to cross-examine the UC witness and otherwise defend herself in the trial of this case and in her counsel's preparations for trial of this case.
>
> Her counsel will still have ample avenues to cross-examine the UC witness and, in particular, concerning the recorded statements and the context of those recorded statements and the matters raised during the Direct Examination."

ROA.449-50. The district court presented substantial reasons for partially closing the courtroom during the agent's testimony, detailed properly on the record. *See Cervantes*, 706 F.3d at 612-13 (outlining in the record how the close proximity of the defendant's family could chill the jurors' responses during voir dire).

The court closure during the testimony of one witness constitutes a partial closure, and the live audio feed made available to the public in a nearby courtroom was justified as a reasonable alternative.

## III. Atkinson has not shown the district court clearly erred in sentencing. The district court properly calculated the advisory guideline range.

### A. *Standard of Review*

The district court's interpretation of the Guidelines de novo and its factual findings for clear error. *United States v. Soto*, 819 F.3d 213, 216

(5th Cir. 2016).

> ### B.    *Atkinson has not shown the district court erred by imposing a 2-level enhancement under U.S.S.G. § 2C1.1(b)(1) because the offense involved more than one bribe. (Responsive to Issue VI.)*

At sentencing on May 26, 2021, counsel for Atkinson lodged an objection to the 2-level enhancement for criminal activity that involved more than one bribe. ROA.3527, 5419 (PSR ¶ 85). Atkinson argued that the government only proved her case involved one bribe, the FBI agent's payment to her regarding the movie project, and any other evidence was at most an attempted bribe, that would not suffice under § 2C1.1(b)(1). ROA.3527. On appeal, without any authority, Atkinson argues payments related to campaign finance violations did not constitute bribes and three other investment ventures were only attempted bribes. Appellant's brief 43. She maintains the argument that the attempted bribes were speculative and did not yield payments to her. Appellant's brief 44.

The judge first noted that in sentencing he was tasked with considering the offense of conviction and relevant conduct, including offenses that are part of the same course of conduct or common scheme or plan as the offense of conviction. ROA.3527. The judge added that the comments to § 2C1.1 indicate that "solicitations and attempts are treated

as equivalent to the underlying offense." ROA.3527. The judge agreed

with probation and the government that there was ample evidence that

the offense involved more than one bribe. ROA.3528.

> In addition to the $10,000 payment for the movie project, the
> offense for purposes of 2C1.1(b)(1) encompass Dr. Atkinson
> assisting Jaime Escobedo to obtain a contract to provide tablet
> computers to RHISD in return for payments -- payments
> through a third party for the benefit of Dr. Atkinson.
>
> I also find that evidence regarding the Istation payment and
> the telehealth program would likewise support the
> application of this enhancement.
>
> The response by the probation office and the United States
> notes other examples that would also support the existence of
> more than one bribe or extortion. I overrule the objection.

ROA.3528.

Atkinson cites only one case in support of her position, *United
States v. Roussel*, 705 F.3d 184 (5th Cir. 2013). In that case, this Court

found the district court erred in finding multiple bribes under this

enhancement, as the evidence only showed one actual bribe and a plan

for future installment payments in accordance with the conspiracy. *Id*. at

198-99. *See* § 2C1.1(b)(1) cmt. n. 2. (installment payments are treated as

one bribe).

Here, in addition to the movie project bribe, the government

presented evidence of other bribes; some that were encompassed in the conspiracy to commit federal bribery involving federal funds, and some that were relevant conduct considered by the judge at sentencing.

With Atkinson's help, Jaime Escobedo secured a contract to provide tablet computers to RHISD in return for payments to the CI, through Atkinson. *See United States v. Madrid*, 610 F. App'x. 359, 389-90 (5th Cir. 2015) (unpublished) (finding bribes coordinated and issued by co-conspirators were part of the offense and supported enhancement under § 2C1.1(b)(1)); *United States v. Misla-Aldarondo*, 478 F.3d 52, 70-71 (1st Cir. 2007) (rejecting defendant's allegation that he should not be held accountable for the bribes of his co-defendant under § 2C1.1(b)(1) because he allegedly had no knowledge of them);*United States v. Bynum*, 327 F.3d 986, 993 (9th Cir. 2003) (multiple bribe enhancement properly applied where defendant and city councilman were jointly involved in a kickback scheme and evidence demonstrated the defendant had knowledge of the second bribe made by the councilman).

Bertha Pena and Yvette Ramos provided testimony regarding a similar scheme involving the company iTutor. ROA.3287-3313, 3314-26, 3334-38. Atkinson entered into a consulting agreement with the

company, while they were pitching their tutoring product to the BISD school board. ROA.3316-18, 4887. Atkinson paid an employee, Adela Garza, to be the front person, and disguise her involvement in the project. ROA.3295, 3320-22. Atkinson also secured education investors to expand this project, to pitch a company called Finish Line Academy; one investor wrote a check to Atkinson for $2,000 and another one paid Atkinson $5,000 in installments. ROA.5410 (PSR ¶ 46). *See United States v. Barraza*, 655 F.3d 375, 385 (5th Cir. 2011) (uncharged bribe was relevant conduct that supported application of two-level increase under § 2C1.1(b)(1) at sentencing).

There was further evidence of Atkinson's involvement in other illicit ventures in the PSR. Regarding a telehealth application, Atkinson received two $5,000 donations to her campaign for her assistance, although the project never succeeded. ROA.5409 (PSR ¶ 37). While Atkinson was on the BISD school board, they approved a contract with the company Istation; Atkinson had entered a consulting contract with the company for $5,000. GE 701. *See* § 2C1.1(b)(1) cmt. background (attempted bribery is treated as equivalent to the underlying offense).

These are just a few examples from the trial evidence and PSR that

the district court could have relied on in finding the enhancement applied. These bribes were intrinsic to the conspiracy to defraud a program receiving federal funds; thus, the district court did not err by imposing the two-level enhancement under § 2C1.1(b)(1).

C. *Atkinson has not shown that the district judge erred by imposing a 4-level enhancement under U.S.S.G. § 3B1.1(a) because there was evidence Atkinson was an organizer or leader of a criminal activity that involved 5 or more participants or was otherwise extensive. (Responsive to Issue VII.)*

The Guidelines provide for a four-level increase to a defendant's base offense level if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(a). Atkinson objected to the enhancement arguing she did not lead an organization, but rather had "distinct relationships with several different people who are not members of the same organization." ROA.4836, 5419 (PSR ¶ 89).

At sentencing, the district judge provided a thorough evaluation of the guideline at issue and his evaluation of the evidence supporting the enhancement. *See* U.S.S.G. § 3B1.1(a).

Dr. Atkinson objects to a four-level enhancement under 3B1.1(a) as the organizer and leader in a criminal activity that involved five or more participates (sic). She argues that

she was not an organizer or leader and that the criminal activity did not involve five or more participants.

As to the number of individuals, 3B1.1(a) applies if the criminal activity involved five or more participants or was otherwise extensive. As to this final phrase, "all persons involved during the course of the entire offense are to be considered, including people whose services were involved unknowingly."

In addition, the enhancement is not limited to situations in which the defendant is an organizer or leader of an official structured organization, such as a cartel, in which all individuals have knowledge of the participation of all other individuals. An organization for purposes of this sentencing guideline refers to multiple participants, multiple individuals being involved in the crime.

Here, the PSR contains facts supported by an evidentiary basis with sufficient indicia of reliability to demonstrate the accuracy of those facts to show that Dr. Atkinson was an organizer or leader of criminal activity that involved five or more participants and that was, in any event, otherwise extensive.

Over the course of years, Dr. Atkinson engaged in illegally seeking personal benefit by abusing her public official position. The PSR identifies several individuals who would qualify as participants and, in any event, the Court finds that the facts in the PSR demonstrate that the criminal activity was otherwise extensive for purposes of 3B1.1(a).

And it was Dr. Atkinson who was the driver of all of the criminal activity seeking the opportunities to obtain a benefit illegally and coordinating the efforts of multiple individuals to obtain the benefit illegally. The trial record amply supports the facts within the PSR, I overrule the objection.

ROA.3533-35. Atkinson argues there was no evidence five or more people were involved or that the criminal activity was "organized" or otherwise extensive. Appellant's brief 45-48. She is wrong.

The PSR outlined how Atkinson used her position in the school districts to manipulate the procurement process to ensure vendors of her choosing were awarded contracts. ROA.5401-32. She was involved with several individuals who she recruited, directed and coordinated: Jamie Escobedo (by ensuring he was awarded the tablet contract, and he reciprocated by giving a $3,000 kickback to her and the CI); Dr. Hussain ($10,000 payment to Atkinson based on the telehealth venture for BISD); Adela Garcia (paid unknown amount by Atkinson to pitch the iTutor product to school districts); 2 education investors (collectively paid $7,000 under the guise of the Finish Line Academy); as well as at least 3 school board members she convinced to vote in her favor, one of which she admitted to paying, Minnie Pena. ROA.4880-81. Atkinson also involved Dr. Hatton and Pat Perez in her scheme to get the movie project on the school board agenda by lying to them about why the CI missed the deadline and pressuring them to overlook the rules. *See* § 3B1.1(b) cmt. n. 3. (the application includes people whose services were involved

50

unknowingly).

The district court's conclusion that the § 3B1.1 enhancement was warranted is not implausible considering the evidence. Atkinson's conspiracy was vast with many players in particular roles. When evaluating the application of § 3B1.1, the district court may consider unidentified participants when there is proof that they were involved in the precise transaction underlying the conviction. *See United States v. Narvaez*, 38 F.3d 162, 166 (5th Cir. 1994) (evidence supported finding that five people individually and cumulatively participated in drug transaction, which supported four-level enhancement of sentence for being "organizer" of criminal activity, even though identity of one participant was unknown).

There was ample evidence Atkinson recruited at least 5 or more participants for different roles within the conspiracy. *See* § 3B1.1(b) cmt. n. 4; *United States v. Brown*, 727 F.3d 329, 340-41 (5th Cir. 2013) (enhancement under § 3B1.1 was properly applied where the evidence showed the defendant recruited several people to cash checks in a conspiracy to commit theft from a program receiving federal funds); *United States v. Liu*, 960 F.2d 449, 456 (5th Cir. 1992) (finding no clear

error in district court's application of manager or supervisor enhancement to defendant responsible for finding accomplices to join, and customers to fund, an immigration fraud scheme).

D.  *Atkinson has not shown that the district court erred by denying her a 3-level downward adjustment under U.S.S.G. § 2X1.1(b)(2) because the evidence demonstrated she completed all acts necessary to complete the substantive offense. (Responsive to Issue VIII.)*

Atkinson argues the district court erred in denying the three-level reduction she requested pursuant to U.S.S.G. § 2X1.1(b)(2). ROA.3532-33, 4834-35. Section 2X1.1(b)(2) states as follows: "If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control."

Atkinson argued at sentencing that § 2X1.1(b)(2) applied because she did not commit all the acts necessary for the successful completion of the substantive offense. ROA.3533, 4834-35. At sentencing, the judge reasoned:

> I agree with the probation office and -- and the Government's arguments that that particular sentencing guideline does not apply because Dr. Atkinson, as demonstrated by the facts in the PSR that are supported by sufficient indicia of reliability to support their accuracy, that she indeed committed all the acts necessary for the successful completion of the substantive offense for the amounts included in the table in paragraph 76, with the exception of -- of the telehealth one. And -- and, so, I -- I -- I find that the three-level downward departure is not applicable. I overrule the objection.

ROA.3533. Because the district court removed the telehealth venture from the calculation, the benefit amount attributed to Atkinson was lowered from $56,000 to $46,000. ROA.3533, 5416 (PSR ¶ 76).

Atkinson uses *United States v. John* to support her position that the intended versus actual amount of money involved in the conspiracy is the determining factor in assessing the application of § 2X1.1(b)(2). 597 F.3d 263, 283–84 (5th Cir. 2010), *abrogated by Van Buren v. United States*, 141 S. Ct. 1648 (2021). John was an account manager at Citibank and she, along with co-conspirators, planned to fraudulently access funds from 76 accounts. *Id.* at 280-81. Although John had accessed and printed the information for all of these accounts, the investigation only showed actual losses to four accounts at the time she and her conspirators were apprehended. *Id.* at 284-84. Review of the opinion shows this Court found a number of preparatory steps remained to be taken in order to complete

a conspiracy to commit computer fraud; thus, the three-level decrease was warranted. *Id.* at 284-85.

In this application of the sentencing guidelines, the inquiry focuses on the substantive offense and the defendant's conduct in relation to that specific offense. U.S.S.G. § 2X1.1(b)(2). Atkinson seems to argue the $10,000 bribe was the only part of the conspiracy that she completed. But this is contrary to the evidence at trial that the jury evaluated when finding Atkinson guilty of conspiracy. The benefits and amounts of the $46,000 were proven through trial testimony and the FBI's investigation of Atkinson included in the PSR. ROA.5404-18. *See* U.S.S.G. § 2X1.1(b)(2) cmt. background (explaining that no reduction of the offense level is warranted where the substantive offense was substantially completed).

There was nothing incomplete about the conspiracy perpetrated in this case; thus, the district court's denial of Atkinson's request for the downward adjustment was proper. *See United States v. Knox*, 112 F.3d 802, 813 (5th Cir.), *vacated in part on other grounds*, 120 F.3d 42, 43 (5th Cir. 1997) (the district court did not err in denying the three point reduction under U.S.S.G. § 2X1.1(b)(2) when reviewing the evidence as a whole, the Court did not have a definite and firm conviction that the

district court made a mistake in finding the defendant had completed all steps he believed necessary to launder the $10 million); *United States v. Perez*, 355 F. App'x. 349, 351 (11th Cir. 2009) (unpublished) (district court did not err by declining to award defendant a three-level reduction, pursuant to § 2X1.1(b)(2), for incomplete conspiracy where he and the co-conspirators had taken crucial steps towards completing the substantive offense); *Cf. Soto*, 819 F.3d at 218-20 (clear error in a district court's denying a three-level reduction under § 2X1.1(b)(1) where the evidence showed the defendant bought the ammunition and put it in his car prior to his arrest, and there was no evidence as to when the defendant planned to deliver the ammunition); *United States v. Rodriguez-Leos*, 953 F.3d 320, 327-28 (5th Cir. 2020) (same).

Even assuming the government failed to show every payment was made, Atkinson had completed all of the actions necessary to receive the money prior to her arrest. *See United States v. Ogle*, 92 F. App'x. 996 (5th Cir. 2004) (the district court did not clearly err when it found that the substantive offense of money laundering was substantially completed, but for the intercession of law enforcement; thus the defendant was not entitled to the reduction under § 2X1.1); *United States v. Toles*, 867 F.2d

222, 223 (5th Cir. 1989) (downward adjustment under § 2X1.1(b) was not warranted where the defendant gave robbery note to bank teller that lacked keys to her cash box and could not give him money; the defendant had completed all acts necessary for successful completion of robbery).

## IV. Atkinson's within-guidelines sentence of 80 months is not substantively unreasonable and certainly not plain error. (Responsive to Issue IX.)

### A. *Standard of Review*

This Court reviews a sentence to determine whether it is reasonable in light of the factors in 18 U.S.C. § 3553(a). *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006). The district judge in this case imposed a guideline sentence, which is entitled to a presumption of reasonableness. ROA.3569-70. *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006).

When reviewing a sentence, this Court must first ensure that "the district court committed no significant procedural error," such as failing to calculate or improperly calculating the guideline range, failing to consider the Section 3553(a) factors, considering "clearly erroneous facts," or failing to adequately explain the sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007). Then this Court reviews the substantive

reasonableness under the abuse of discretion standard and the totality of the circumstances. *Id.*

A sentence is substantively unreasonable when: 1) it does not account for a factor that should have received significant weight; 2) it gives significant weight to an irrelevant or improper factor; or 3) it represents a clear error of judgment in balancing the sentencing factors. *United States v. Gutierrez,* 635 F.3d 148, 154 (5th Cir. 2011). Appellate review for substantive reasonableness is highly deferential, because the sentencing court is in a better position to find facts and determine their significance under statutory factors with respect to a particular defendant. *United States v. Lugo-Lopez,* 833 F.3d 453 (5th Cir. 2016).

"[T]he sentencing court is free to conclude that the applicable Guidelines range gives too much or too little weight to one or more factors and may adjust the sentence accordingly under § 3553(a)." *United States v. Lopez-Velasquez*, 526 F.3d 804, 807 (5th Cir. 2008); *see* 18 U.S.C. § 3553(a).

Atkinson challenges the substantive reasonableness of her sentence. Appellant's brief 50-54. But she failed to object to the reasonableness of the sentence imposed. ROA.3568-69. *See United States*

*v. Peltier*, 505 F.3d 389, 391 (5th Cir. 2007), *abrogated by Holguin-Hernandez v. United States,* 140 S. Ct. 762 (2020) (an unpreserved reasonableness challenge will be reviewed on appeal for plain error). Thus, this Court's review is for plain error. *See United States v. Olano,* 507 U.S. 725, 732-37 (1993); *United States v. Thompson*, 757 F. App'x. 408, 409 (5th Cir. 2019) (unpublished) (reviewing defendant's claim that the denial of a downward variance was substantively unreasonable for plain error).[7]

B.    *The sentence is substantively reasonable because the district court carefully considered the 18 U.S.C. § 3553(a) factors, concluded those factors did not support a downward variance, and imposed a guideline sentence.*

After the district court's rulings on several sentencing issues, Atkinson's guideline range was 78-97 months. ROA.3542-43. The prosecutor asked the judge to vary upward, to the maximum sentence of 120 months' imprisonment. ROA.3543. Atkinson filed a motion for downward variance prior to sentencing and verbally requested a downward variance at the sentencing hearing. ROA.3555, 4909-17. On appeal, Atkinson claims the district judge failed to properly consider her

---

[7] Under that standard, Atkinson must show a clear and obvious error that affected her substantial rights; and if she can demonstrate this, she must convince this Court that it affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

mitigation evidence—an anxiety diagnosis and gambling addiction—when fashioning her sentence. Appellant's brief 50-54. She further complains of a sentencing disparity. *Id.*

At sentencing, the district court properly provided a thorough, fact-specific explanation for why its sentencing decision was justified by the factors in 18 U.S.C. § 3553(a). *See United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005). ROA.3562-70. The district judge first acknowledged the need for the sentence to reflect the seriousness of the offense, the need to promote respect for the law, and the need to provide a just punishment.

> Your counsel points out in the sentencing memorandum that the crimes involved a relatively modest amount, about $56,000, and that no victim is due restitution. That may be true, but the seriousness of the crimes is not measured solely by the amount at stake. Your crimes take on great significance because they concern your abuse of the public trust of the positions you held in which your duties were to serve but which you used to illegally benefit yourself.
>
> Public corruption reduces the community's faith in public service and governance. It renders society cynical and tarnishes the services that law-abiding public officials provide. I find that the seriousness of the offense, the need to promote respect for the law, and the need to provide a just punishment weigh heavily toward a stricter sentence.

ROA.3563. The judge went on to address the need to impose a sentence that would deter criminal conduct.

> All across the country. . . we elect many public officials. . . We place them in positions of influence with the power to influence others and make decisions that affect many lives. You held such a position and abused it. I need to impose a sentence that will deter others from engaging in similar conduct. This factor also weighs heavily toward a stricter sentence.

ROA.3563-64. The judge then focused on the need to protect the public from future crimes of Atkinson and considered her personal needs.

> I do find that you represent a relatively low threat of harm to the public. You have many personal challenges at the moment that have been discussed and that are within the sentencing memorandum. You will not hold public office again. This factor weighs towards a more lenient sentence.
>
> And I need to consider what sentence will provide you with training, care, or other correctional treatment in the most effective manner.

ROA.3564. The judge acknowledged the many letters received on Atkinson's behalf and found she had helped her community in many ways and demonstrated strong devotion to her family. ROA.3564. The judge sentenced Atkinson to 80 months, noting the crimes occurred over a period of years, and was not simply one incident that could be attributed to a particularly vulnerable moment, but also stated it was not a case that warrants the statutory maximum. ROA.3565-66. The judge further recommended that the Bureau of Prisons evaluate Atkinson for programs

aimed at gambling addictions, and if appropriate, ordered that Atkinson should participate in those programs. ROA.325 (judgment), 3567 (sentencing).

Atkinson's argument that the judge ignored the mitigation arguments she presented at sentencing is clearly belied by the record. The district court reviewed the PSR that detailed Atkinson's personal issues, including her anxiety and gambling problems, her sentencing memorandum, and medical records, and considered her attorney's argument. ROA.4902-5394, 5422-24 (PSR ¶¶ 103, 119-22).

Atkinson's counsel requested that the judge recommend drug and alcohol evaluation for Atkinson while incarcerated; the district court was attentive to this concern and recommended RDAP (residential drug and alcohol program). ROA.325 (judgment), 3568-69 (sentencing). *See* § 3553(a)(2)(D). The mere belief by Atkinson that the mitigating factors she presented for the court's consideration should have been balanced differently is insufficient to disturb the presumption of reasonableness. *United States v. Alvarado*, 691 F.3d 592, 597 (5th Cir. 2012).

Atkinson also argues her sentence does not account for a sentencing factor that should have received significant weight: the need to avoid

unwarranted sentence disparities. *See* 18 U.S.C. § 3553(a)(6). However, in the Fifth Circuit, the unwarranted disparity factor is not entitled to significant weight when the sentence imposed—like Atkinson's—falls within the guideline range. *See United States v. Diaz*, 637 F.3d 592, 604 (5th Cir. 2011). In fact, Atkinson's sentence of 80 months is at the low-end of the guideline range of 78-97 months.

The sentencing court is directed to make an individualized assessment based on the facts presented, with respect to each defendant in each case. *United States v. Key*, 599 F.3d 469, 475-76 (5th Cir. 2010) (citing *Gall*, 552 U.S. at 50) (holding disparity in sentencing, standing alone, is insufficient to render a sentence substantively unreasonable).

In support of her argument, Atkinson cites to a single case, *United States v. Delgado*, No. 4:18-CR-115 (S.D. Tex.), No. 19-20697, *aff'd* 984 F.3d 435 (5th Cir. 2021). Appellant's brief 51-52. Although the defendant in that case had similar convictions and the same guideline range (78-97 months) the record reveals the sentencing judge in that case varied downward due to the age (66) and serious medical ailments (hypertension and a liver transplant) of the defendant. *Id.* The government in that case requested a sentence of 97 months, as opposed to the 120 months

requested in this case. Atkinson has not shown a disparate sentence.

This Court has explained that the disparity factor focuses on "similarly situated defendants nationwide" and "does not require the district court to avoid sentencing disparities between co-defendants who might not be similarly situated." *See United States v. Perkins*, 846 F. App'x. 256, 258 (5th Cir. 2021) (unpublished) (citing *United States v. Balleza*, 613 F.3d 432, 435 (5th Cir. 2010)). Atkinson has pointed to no nationwide statistics. *See Balleza*, 613 F.3d at 435.

Atkinson has failed to show that any alleged sentence disparity factor should have received significant weight; the district judge in this case imposed a guideline sentence, which is entitled to a presumption of reasonableness. *Alonzo*, 435 F.3d at 554. Contrary to Atkinson's contentions, the court appropriately balanced the 18 U.S.C. § 3553(a) sentencing factors. Atkinson's argument on appeal reflects nothing more than a disagreement with the court's balancing of the sentencing factors, which is insufficient to establish plain error.

## **CONCLUSION**

This court should affirm the judgment and conviction.

Respectfully submitted,


JENNIFER B. LOWERY
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

*s/Jessica C. Akins*
JESSICA C. AKINS
Assistant United States Attorney
U.S. Attorney's Office for the
Southern District of Texas
1000 Louisiana, Suite 2300
Houston, Texas 77002
713.567.9102

ATTORNEYS FOR APPELLEE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2022, an electronic copy of Appellee's Brief was served by notice of electronic filing via this court's ECF system upon opposing counsels, Randolph Schaffer Jr. and Josh Schaffer.

Upon notification that the electronically-filed brief has been accepted as sufficient, and upon the Clerk's request, seven paper copies of this brief will be submitted to the Clerk. *See* 5th Cir. R. 25.2.1; 5th Cir. R. 31.1; 5th Cir. ECF filing standard E(1).

s/ *Jessica C. Akins*
JESSICA C. AKINS
Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains **12,991** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook, 14-point font for text and 12-point font for footnotes.

3.  This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

4.  This brief complies with the electronic submission of 5th Cir. R.25.2.1, because it is an exact copy of the paper document.

5.  This brief is free of viruses because it has been scanned for viruses with the most recent version of McAfee Endpoint Security scanning program.

s/ *Jessica C. Akins*
JESSICA C. AKINS
Assistant United States Attorney

Dated: February 25, 2022
